Judqe Simpsok
delivered the opinion of the Court.
R. Growning & Co. exhibited a bill in chancery to foreclose a mortgage executed to them on the 26th January, 1841, by F. W. Behn on lot No. 3, in the town of Hickman, to secure the payment of a ■ debt of six thousand dollars, due to the complainants by the mortgagor.
m”6 ass eit upon" lanTmoitgaged to _ compiainants m the ■original val, tíbe foreclosed bill ^Compfainants in their answer to the cross bill say that the was boughfwRh goods’6 by0lthe same contract-— fien, &6tbat the for. ^Hehf that lieii °Ut'asserted could not be deanswerU.P°n SU°
During the pendency of the suit, Smith and others upon petitions filed by them for the purpose, were made defendants, and in their answers, which they make cross-bills, they allege that the lot No. 3, mortgaged to the complainants in the original bill, was sold to the mortgagor,-F. W. Behn, by Lonsdale and Belknap, who executed to him a deed of conveyance for it, reciting on its face the payment of the purchase money, when in fact the sale was made on time, and notes executed by the purchaser for the purchase money, which notes have never been paid, but have come to their hands by assignment, and by virtue thereof, they have the vendor’s lien, and, therefore, entitled to priority over the mortgagees of the purchaser.
The complainants in the original bill resist the lien thus asserted upon two grounds. First, that the notes assigned were not executed for the price of the lot No. 3, but upon a joint sale of said lot and a large stock of merchandise, sold by Lonsdale and Belknap to F. W. Behn. Secondly, that they are themselves purchasers for a valuable consideration, without any notice that any part of the purchase money remained unpaid at the time they obtained their mortgage.
1. The deed from Lonsdale and Belknap is not in the record, but as the parties admitin the pleadings its execution> an(t that it acknowledges the payment of the purchase money, its absence cannot operate to the prejudice r~ ~ , of Crowning & Co. 1 he complainants m the cross-bills can have no lien upon the lot until they establish the ^act’ that the notes assigned to them, were executed for the purchase money, due on its sale by Lonsdale , n u . txt n i m, . . , ,- and Belknap to b. W. Behn. There is no evidence of this fact in the record. It is denied by the mortgagees *n their answer to the cross-bills filed by the assignees, The answer, it is true, contains a qualified admission on the subject, that is, that the notes were executed for the price of the lot, and also a large stock of goods sold same time, but denies, in express terms, that they were executed for the purchase money of the lot alone, This admission, however, did not authorize a decree to *385 ■any extent in favor of the complainants -in the cross-bill. The whole amount could not be decreed to them, because it was not embraced by the admission; nor would any part of their demands be decreed to them, there being nothing to show what part of the debt, for which the notes were executed, was for the purchase money of the lot. It was incumbent on the assignees to present their claim in such an attitude that the Court would render a decree for it in their favor, and having failed to do it, they were not entitled to any priority on account of the vendor’s lien claimed b.v them, nor could the Court properly render any decree for them on the claim thus defectively presented.
When a mortgagee at the date of his mortgage is ignorant of a vendor's lien, & the vendor has conveyed by deed reciting the payment of the consideration, the vendor’s lien 'is lost.
As between equ t es the elder must prevail.
2. The2’e is no testimony that the-mortgagees, at the time of the executioii of the mortgage,- wei’e appi’ized that the purchase money for the lot was unpaid. The deed made to the mortgagor, acknowledged its payment. They were under no obligation to enquire any further into -the fact. They deny positively 'that they had any notice upon the subject, and state they believed that the whole of the pui’chase money had been paid. Their statement in relation to the execution of the ■notes for the price of the lot, and also some merchandise sold at the same time, is founded, as they allege, on information subsequently acquired. On this ground, therefore, as well as bn the previous one, the lien claimed by the assignees was unavailing against Growning & Co., if their moi’tgage was in other respects legal and valid, and conveyed to them the legal title -to the lot.
But it is contended -that if the lien assei’ted by the assignees, as such, has not been established, that still they are entitled to pi'iority over Growning & Co. by virtue of a mortgage executed by F. \Y. Bebn to Lonsdale on the 6th day of July, 1841. This mortgage was executed subsequently to the one set up and relied upon by the complainants in the oi’iginal bill; but a precedence is claimed for it upon the ground that the first mortgage had no seal attached to it, and as it was executed before the passage of the act dispensing with *386 seals in the execution of such instruments, it is contended that it is invalid, and did not operate to pass the legal title to the mortgagees, but at most invested them with an equity alone to the lot contained in the mortgage. In relying upon this ground, however, the fact seems to have been overlooked, that the mortgage to Lonsdale, for which a preference is claimed, is liable to the same objection, it also having been executed without a seal, so that if neither instrument creates any estate hut a mere equity, the rule that the oldest equity must prevail is decisive, as between them, in favor of the claim under the first mortgage.
A mortgage appearing to have a seal attached, was recorded without the scrawl or seal upon the record. Held that a party objecting to it for want of a seal is bound to show that there was none at the time of recording.
It seems to us, however, that the first mortgage had a seal affixed to it when it was executed. The original mortgage is exhibited — a seal is attached to it — and the testimony conduces strongly to prove that the word seal, inside of the scrawl, is in the handwriting, either of the individual who wrote the deed or of the mortgagor. The proof is, that their handwriting bears a close resemblance. If it be the handwriting of either? the presumption is strong, that the seal was to the deed at the time of its execution. As the mortgage purports to have been signed and sealed, and actually has a scrawl attached as a seal, it devolves upon those who assert that it was executed without a seal, to demonstrate the fact to be so. To do this a copy of the mortgage from the record is relied upon, by which it appears that the seal was not recorded as a part of the deed, and the testimony of the deputy Clerk, who recorded the deed, is taken, and he proves that, in his opinion, there was no seal to the mortgage at the time it was recorded, and if there had been a seal to it, that it would have been so recorded. It is evident, however, that he recollects nothing about the original mortgage and bases his testimony alone on what appears upon the record. We do not consider the absence of the seal on the record as evidence sufficient to disprove the existence of a seal at the time of its execution, inasmuch as the original deed not only purports to be? but is really a sealed instrument, and the testimony on *387 the point leaves scarcely any room for doubt that a seal was affixed to the writing when it was executed.
Hewitt for appellants; Fry Page for appellees.
But whether the mortgage was or not sealed, the right of Growning & Co. to have the balance due them first paid out of the proceeds of the sale of the lot, is clear and indisputable, inasmuch as the assignees of the notes failed to prove that they were executed for the price of the lot in question.
Wherefore, the decree is reversed and cause remanded that a decree may be rendered directing the payment of the balance due to Growning & Co. before the assignees of the notes on F. W. Behn are allowed to claim any part of the proceeds of the sale of lot No.
3, and for further proceedings consistent with this opinion.